**GORLICK, KRAVITZ & LISTHAUS, P.C.**
**Bruce L. Listhaus (BL2381)**
**Joy K. Mele (JM0207)**
**17 State Street, 4th Floor**
**New York, New York 10004**
**blisthaus@gkllaw.com**
**jmele@gkllaw.com**
**Tel. (212) 269-2500**
**Fax (212) 269-2540**
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------------X

| | |
|---|---|
| **MASON TENDERS DISTRICT COUNCIL** : | |
| **WELFARE FUND; MASON TENDERS DISTRICT** : | |
| **COUNCIL PENSION FUND; MASON TENDERS** : | |
| **DISTRICT COUNCIL ANNUITY FUND; MASON** : | |
| **TENDERS DISTRICT COUNCIL TRAINING FUND;** : | |
| **MASON TENDERS DISTRICT COUNCIL HEALTH** : | **COMPLAINT** |
| **AND SAFETY FUND; and DOMINICK GIAMMONA,** : | |
| **as FUNDS' CONTRIBUTIONS/DEFICIENCY** : | |
| **MANAGER,** : | |

                                    :
                **Plaintiffs,**      :
                                    :
        - against -                 :
                                    :
**BILTMORE GENERAL CONTRACTORS, INC.; and** :
**FRANK GEISER, in his PERSONAL CAPACITY,**  :
                                    :
                **Defendants.**      :
-------------------------------------------------------------------------X

Plaintiffs Mason Tenders District Council Welfare Fund, Mason Tenders District Council

Pension Fund, Mason Tenders District Council Annuity Fund, Mason Tenders District Council

Training Fund, Mason Tenders District Council Health and Safety Fund (the "Funds"), and

Dominick Giammona, as Funds' Contributions/Delinquency Manager (collectively "Plaintiffs"),

by and through their attorneys, Gorlick, Kravitz & Listhaus, P.C., as and for their Complaint,

respectfully allege as follows:

## NATURE OF THE ACTION AND JURISDICTION

1.     This is a civil action brought pursuant to, *inter alia*, §§ 502(a)(3) and 515 of the Employee Retirement Income Security Act ("ERISA"), as amended (29 U.S.C. §§ 1132(a)(3) and 1145), and § 301 of the Labor Management Relations Act of 1947 (29 U.S.C. § 185) (the "Taft-Hartley Act"), by Plaintiffs for breach of contract, injunctive relief, and other legal and equitable relief under ERISA.

2.     This Complaint alleges, *inter alia*, that by failing, refusing, or neglecting to comply with specific statutory and contractual obligations, Defendants Biltmore Contracting, Inc. ("Biltmore") and Frank Geiser ("Geiser") violated one or more contracts between an employer and a labor organization, as defined under the Taft-Hartley Act, the Funds' respective trust agreements, and ERISA.

3.     Jurisdiction of this Court is invoked under the following statutes:

     a.     ERISA § 502(e)(1) and (f) (29 U.S.C. § 1132(e)(1) and (f));

     b.     Taft-Hartley Act § 301 (29 U.S.C. § 185);

     c.     28 U.S.C. § 1331 (federal question);

     d.     28 U.S.C. § 1337 (civil actions arising under Act of Congress regulating commerce); and

     e.     28 U.S.C. § 1367 (supplemental jurisdiction).

4.     Venue properly lies in this district under ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)) and Taft-Hartley Act § 301 (29 U.S.C. § 185(c)) because the Funds are administered in this district, the contractual breaches took place in this district and Biltmore and Geiser reside and/or may be found in this district. Service of process may be made on Biltmore in any other district in which it may be found pursuant to ERISA § 502(e)(2) (29 U.S.C. § 1132(e)(2)).

## PARTIES

5.      The Funds are jointly-administered, multi-employer, labor-management trust funds established and maintained pursuant to various collective bargaining agreements in accordance with Taft-Hartley Act §§ 302(c)(5) and (c)(6) (29 U.S.C. § 186(c)(5) and (c)(6)).  The Funds also are employee benefit plans within the meaning of ERISA §§ 3(1), 3(2), 3(3) and 502(d)(1) (29 U.S.C. §§ 1002(1)-(3), and 1132(d)(1)), and multi-employer plans within the meaning of ERISA §§ 3(37) and 515 (29 U.S.C. §§ 1002(37) and 1145).  The Funds are authorized to maintain suits as independent legal entities under ERISA § 502(d)(1) (29 U.S.C. § 1132(d)(1)).  The Funds provide fringe benefits to eligible employees on whose behalf employers in the construction industry contribute to the Funds pursuant to collective bargaining agreements between such employers and the Mason Tenders District Council of Greater New York ("Union").  The Funds are third-party beneficiaries to such collective bargaining agreements as collectors and trustees of employer contributions made pursuant to these collective bargaining agreements.  The Funds maintain their offices and are administered at 520 Eighth Avenue, Suite 600, New York, New York 10018.

6.      The Funds are also the duly authorized collection agent for the Union and the Mason Tenders District Council Political Action Committee ("PAC").

7.      Plaintiff      Dominick      Giammona      ("Giammona")      is      the      Funds' Contributions/Deficiency Manager and is a fiduciary of the Funds within the meaning of ERISA §§ 3(21) and 502 (29 U.S.C. §§ 1002(21) and 1132).  Giammona brings this action in his fiduciary capacity.

8.      Non-party Union is a labor organization within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185) and represents employees in an industry affecting commerce as defined by

Taft-Hartley Act § 501 (29 U.S.C. § 142) and ERISA § 3(4) (29 U.S.C. § 1002(4)).

9.      Defendant Biltmore is a for-profit domestic corporation doing business in the state of New York as an employer within the meaning of ERISA §§ 3(5) and 515 (29 U.S.C. §§ 1002(5) and 1145), and is an employer in an industry affecting commerce within the meaning of Taft-Hartley Act § 301 (29 U.S.C. § 185). Upon information and belief, Biltmore's principal office is located at 526 Midland Ave., Staten Island, New York 10306.

10.     Defendant Geiser is and was at all relevant times, an owner, President, and controlling corporate official of Biltmore and executed the 2011-2014 Mason Tenders District Council of Greater New York Independent Collective Bargaining Agreement (the "Agreement") on behalf of Biltmore, and in his personal capacity.  Upon information and belief, Geiser has an office and regularly transacts business at 526 Midland Ave., Staten Island, New York 10306.

## BACKGROUND FACTS

11.     On or about July 1, 2011, Biltmore entered into the Agreement with the Union, effective the day of signing through June 30, 2014.

12.     The Agreement contains an evergreen clause which provides that it will remain in effect year-to-year after its initial term unless either signatory provides the other with written notice at least sixty days, but no more than ninety days, before expiration of the Agreement.

13.     The Agreement contains a provision located right above the signature block which states that "[t]he person signing on behalf of the Employer also agrees to be personally bound by and to assume all obligations of the Employer provided in this Agreement and he warrants and represents that he has authority to bind the Employer and the officers, principals and/or members thereof."

14.     Geiser, who is identified as President of Biltmore, signed the Agreement twice, once

4

in his corporate capacity on behalf of Biltmore, and once in his personal capacity. It states underneath the corporate capacity signature line "Company Officer Signature in his/her Corporate Capacity." Underneath the personal capacity signature line, it states "Company Officer Signature *in his/her Personal Capacity*." (emphasis in original)

15.    By signing the Agreement in his personal capacity, Geiser agreed to be personally bound by and to assume all obligations of Biltmore provided in the Agreement, including but not limited to the obligation to pay fringe benefit contributions to the Funds, and to remit dues checkoffs and PAC contributions.

16.    To date, the Agreement has not been modified, amended, or terminated and remains in effect.

17.    During the terms of the Agreement, Biltmore performed work subject to the terms of the Agreement.

18.    Among other things, the Agreement requires Biltmore to: (i) submit to the Funds reports detailing the number of hours that Biltmore employees performed work within the trade and geographic jurisdictions of the Union ("Covered Work"); (ii) make fringe benefit contributions to the Funds based on the number of hours of Covered Work its employees perform; (iii) deduct dues checkoffs and PAC contributions from the wage of employees who performed Covered Work and authorized such deductions in writing; (iv) remit all deducted dues checkoffs and PAC contributions to the Union; (v) permit the Funds and/or their designated representatives to audit Biltmore's books and records; and (vi) apply interest and other fees and costs on delinquent fringe benefit contributions.

19.    Upon information and belief, Biltmore was also bound to the New York City School Construction Authority Project Labor Agreement ("PLA") which covered work on certain New

York City public school projects. The PLA required that Biltmore make contributions to the Funds, deduct and remit dues checkoffs, and comply with other terms and conditions specified in the Agreement for all Covered Work on the New York City public school projects.

20.     The Funds' auditors performed an audit of Biltmore's books and records ("Audit") for the period of January 2, 2016 to March 31, 2017 ("Audit Period").

21.     The Audit revealed there were 14,091 hours of Covered Work performed by Biltmore employees during the Audit Period for which Biltmore and Geiser failed to comply with their obligations under the Agreement and/or the PLA to make fringe benefit contributions and remit deducted dues checkoffs and PAC contributions.

22.     By correspondence dated May 30, 2018, the Funds demanded full and immediate payment of all unpaid amounts revealed through the Audit.

23.     To date, neither Biltmore nor Geiser have paid the amounts due in the Audit.

24.     Upon information and belief, Biltmore continued to perform Covered Work after the Audit, and continues to perform Covered Work.

**AS AND FOR A FIRST CLAIM FOR RELIEF**
**(CLAIM FOR BREACH OF CONTRACT FOR DELINQUENT FRINGE BENEFIT**
**CONTRIBUTIONS DURING THE AUDIT PERIOD)**

25.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 24 of this Complaint, as if fully set forth herein.

26.     Pursuant to the Agreement, Biltmore and Geiser must make fringe benefit contributions to the Funds for each hour of Covered Work performed by Biltmore employees as set forth in Article VI of the Agreement.

27.     Biltmore and Geiser failed to make contractually mandated fringe benefit contributions for 14,091 hours of Covered Work performed by its individual employees during the

Audit Period, resulting in a principal fringe benefit contributions delinquency of $369,382.76.

28.     Biltmore and Geiser's failure to make required fringe benefit contributions to the Funds during the Audit Period is a breach of the Agreement and the PLA.

29.     Article VI § 17(f) of the Agreement requires employers found delinquent in their payment of fringe benefits to pay interest on the unpaid amounts from the date the fringe benefit contributions were due until the date they are paid at the rate prescribed under Section 6621 of Title 26 of the United States Code.

30.     Article VI § 17(f) of the Agreement requires employers found delinquent in their payment of fringe benefits to pay the reasonable attorneys' fees and costs incurred by the Funds in connection with the delinquency, audit, or other collection efforts.

31.     Article VI § 17(g) of the Agreement provides that in the event that formal proceedings to recover unpaid contributions are instituted and the Court renders judgment for the Funds, Biltmore must pay to the Funds, in accordance with the judgment of the Court: (i) the unpaid contributions; (ii) interest on unpaid contributions determined by using the rate prescribed under Section 6621 of Title 26 of the United States Code; (iii) interest on the unpaid contributions as and for liquidated damages; (iv) the Funds' reasonable attorneys' fees and costs of the action; and (v) such other legal or equitable relief as the court deems appropriate.

32.     Article VI § 17(j) of the Agreement provides that in the event Biltmore does not make payments to the Funds or remit dues check-offs or PAC contributions within seven days of the due dates specified under Article VI, it shall be liable for an additional payment of twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages.

33.     Article VI § 17(k) of the Agreement provides that if an audit of Biltmore's books and records is required and a deficiency in fringe benefit contributions or remittance of working dues check-offs or PAC contributions is found which is not paid within seven days after reasonable notice, Biltmore agrees to pay as additional liquidated damages twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the business of the day on which any such payment was initially due to the date actually paid, plus the cost of all audit, accountants', attorneys' and other fees necessary to effect collection of the deficiency.

34.     Biltmore and Geiser are jointly and severally liable to the Funds under the Agreement and/or the PLA for failing to make required fringe benefit contributions for Covered Work performed by Biltmore employees during the Audit Period in the principal amount of $369,382.76, plus interest, liquidated damages, plaintiffs' reasonable attorneys' fees and costs, and such other legal and equitable relief as the court deems appropriate.

35.     Biltmore is liable to the Funds under the PLA for failing to make required fringe benefit contributions for Covered Work performed by Biltmore employees during the Audit Period in the principal amount of $369,382.76, plus interest, liquidated damages, plaintiffs' reasonable attorneys' fees and costs, and such other legal and equitable relief as the court deems appropriate.

## AS AND FOR A SECOND CLAIM FOR RELIEF
### (CLAIM FOR BREACH OF ERISA OBLIGATIONS)

36.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1 through 35 of this Complaint, as if fully set forth herein.

37.     ERISA § 515 (29 U.S.C. § 1145) requires employers to make fringe benefit contributions in accordance with the terms and conditions of collective bargaining agreements.

38.     Biltmore is an employer under ERISA and is bound by the Agreement.

8

39.     By signing the Agreement in his personal capacity, Geiser assumed personal liability for Biltmore's ERISA obligations.

40.     During the Audit Period, Biltmore and Geiser failed to make fringe benefit contributions to the Funds as required under the Agreement.  Failure to make such payments violates ERISA § 515 (29 U.S.C. § 1145).

41.     Once it is found that an employer has violated ERISA § 515 (29 U.S.C. § 1145), the Court is required by ERISA 502(g)(2) (29 U.S.C. § 1132(g)(2)) to award the Funds: (i) the unpaid fringe benefit contributions; (ii) interest on the unpaid contributions; (iii) an amount equal to the greater of interest on the unpaid contributions, or liquidated damages provided for under the fund's plan; (iv) reasonable attorneys' fees and costs of the action to be paid by defendants; and (v) such other legal and equitable relief as the court deems appropriate. Interest on unpaid contributions shall be determined by using the rate provided under the Funds' plan, or, if none, the rate prescribed under Section 6621 of Title 26 of the United States Code.

42.     Article VI §§ 17(f) and (g) of the Agreement provide for interest on delinquent fringe benefit contributions at the rate prescribed in Section 6621 of Title 26 of the United States Code.

43.     Article VI §§ 17(j) and (k) of the Agreement provide for liquidated damages at the rate of twelve percent, or the rate prescribed under Section 6621 of Title 26 of the United Sates Code, whichever is greater.

44.     Accordingly, Biltmore and Geiser are jointly and severally liable to the Funds for failing to make required fringe benefit contributions for Covered Work performed by Biltmore employees during the Audit Period in the principal amount of $369,382.76, plus statutory damages, including interest, liquidated damages, Plaintiffs' reasonable attorneys' fees and costs, and such

other legal and equitable relief as the court deems appropriate pursuant to § 502(g)(2) of ERISA

(29 U.S.C. § 1132), and the Agreement.

**AS AND FOR A THIRD CLAIM FOR RELIEF**
**(CLAIM FOR BREACH OF CONTRACT FOR FAILURE TO REMIT DUES**
**CHECKOFFS AND PAC CONTRIBUTIONS)**

45.     Plaintiffs repeat and re-allege each and every allegation contained in Paragraphs 1

through 44, as if fully set forth herein.

46.     Article VI § 3 of the Agreement requires Biltmore to deduct dues checkoffs from

the wages paid to its employees who perform Covered Work within the trade jurisdictions of the

Union and to remit those deductions to the Union.

47.     Article VI § 8 of the Agreement requires Biltmore to deduct and submit PAC

contributions withheld from the wages of Union member employees who work within the Union's

jurisdiction and who authorized such deductions in writing.

48.     During the Audit Period, Biltmore and Geiser failed to deduct and/or remit

$27,550.70 from the wages of its employees who performed Covered Word and authorized

deductions of dues checkoffs and PAC contributions from their wages.

49.     The Funds, as the duly authorized agent for the Union and the PAC, have duly

demanded the dues checkoffs and PAC contributions due and owing for the Audit Period.

50.     Biltmore and Geiser's failure to deduct and/or remit the dues checkoffs and PAC

contributions for the Audit Period is a breach of the Agreement.

51.     Article VI § 17(j) of the Agreement provides that in the event Biltmore does not

remit dues check-offs or PAC contributions within seven days of the due dates specified under

Article VI, it shall be liable for an additional payment of twelve percent, or the percentage rate

prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the

10

amount owing from the close of the day on which any such payment was due to the date when payment is actually made as and for liquidated damages.

52.    Article VI § 17(k) of the Agreement provides that if an audit of Biltmore's books and records is required and a deficiency in remittance of working dues check-offs or PAC contributions is found which is not paid within seven days after reasonable notice, Biltmore agrees to pay as additional liquidated damages twelve percent, or the percentage rate prescribed under Section 6621 of Title 26 of the United States Code, whichever is greater, of the amount owing from the close of the business of the day on which any such payment was initially due to the date actually paid, plus the cost of all audit, accountants', attorneys' and other fees necessary to effect collection of the deficiency.

53.    The Funds are entitled to prejudgment interest on the unremitted dues checkoffs and PAC contributions at the New York State statutory rate of nine percent (9%) per annum pursuant to New York Civil Practice Law and Rules §§ 5001 and 5004.

54.    Biltmore and Geiser are jointly and severally liable for undeducted and/or unremitted dues checkoffs and PAC contributions during the Audit Period in the principal amount of $27,550.70, plus interest from the dates that remittances of the dues checkoffs and PAC contributions were due until the dates that the dues checkoffs and PAC contributions are paid, liquidated damages, and any and all other contractual damages.

## AS AND FOR AN FOURTH CLAIM FOR RELIEF
### (BREACH OF CONTRACT CLAIM FOR AUDIT COSTS)

55.    Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 54 of this Complaint, as if fully set forth herein.

56.    Article VI, § 17(d) of the Agreement provides in relevant part:

11

If after an audit of its books and records the Employer is found to be substantially delinquent, as defined herein, in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement, the Employer shall bear the imputed cost of the audit as set forth below:

$$\frac{\text{total audited deficiency}}{150} \times \text{number of months audited} = \text{imputed cost of audit}$$

Substantially delinquent is defined as any deficiency in the payment of fringe benefit contributions to the Trust Funds set forth in this Article of the Agreement in excess of 10% of the fringe benefit contributions paid to the Trust Funds . . . during the period that is the subject of the audit.   In the event the Trust Funds . . . bring an action to recover the imputed costs of the audit, the Employer shall be obligated to pay the reasonable costs and attorneys' fees incurred in bringing said action.

57.    Biltmore paid to the Funds $627,904.77 in fringe benefit contributions during the Audit Period.

58.    Biltmore is substantially delinquent in its payment of fringe benefit contributions to the Funds because its audited fringe benefit contributions deficiency of $369,382.76 is more than ten (10%) percent of the fringe benefit contributions paid to the Funds during the Audit Period.

59.    Following the Agreements' contractual formula for calculating the imputed cost of the Audit, the imputed cost of the Audit is $36,938.28.

60.    The Funds have duly demanded the imputed cost of the Audit from Biltmore.

61.    Neither Biltmore nor Geiser have paid the imputed cost of the Audit.

62.    Biltmore and Geiser's failure to pay the imputed cost of the Audit is a breach of the Agreement.

63.    Biltmore and Geiser are jointly and severally liable under the Agreement for the imputed cost of the Audit, and the Funds' reasonable attorneys' fees and costs.

12

## AS AND FOR A FIFTH CLAIM FOR RELIEF
## (DEMAND FOR AN ORDER DIRECTING BILTMORE AND GEISER TO PERMIT AN AUDIT OF BILTMORE'S BOOKS AND RECORDS)

64.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 63, as if fully set forth herein.

65.     Pursuant to Article VI, Section 17(a) of the Agreement, Biltmore is required to permit and cooperate with the Funds and/or their designated representatives in the conduct of audits of Biltmore's books and records.  These include without limitation "payroll sheets, W-2 forms, New York State Employment Reports, Insurance Company Reports and supporting checks, ledgers, general ledger, cash disbursement ledger, vouchers, equipment leases, 1099 forms, evidence of unemployment insurance contributions, payroll tax deductions, disability insurance premiums, certification of workers compensation coverage, and any other items concerning payroll(s)."

66.     By signing the Agreement, Geiser agreed to be personally bound by and to assume all obligations of the Employer provided in the Agreement, including but not limited to the obligation to file certain employer contribution reports with the Funds, and to permit and cooperate with the Funds and/or their designated representatives in the conduct of audits of Biltmore's books and records.

67.     Accordingly, pursuant to the terms and conditions of the Agreement, the Funds demand an order directing Biltmore and Geiser to permit and cooperate with the Funds and/or their designated representatives in the conduct of an audit of Biltmore's books and records for the period April 1, 2017 through the present.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
## (CLAIM FOR FRINGE BENEFIT CONTRIBUTIONS, DUES CHECKOFFS, PAC CONTRIBUTIONS, AUDIT COSTS, AND DAMAGES FOUND PURSUANT TO AUDIT OF BILTMORE'S BOOKS AND RECORDS)

68.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 67 of this Complaint, as if fully set forth herein.

69.     The Agreement, Article VI, §§ 3-12, 17(f) and 17(k) require Biltmore and Geiser to pay fringe benefit contributions, dues checkoffs, and PAC contributions found due and owing pursuant to an audit of Biltmore's books and records.

70.     If an audit of Biltmore's books and records finds it to be substantially delinquent, as defined in Article VI, § 17(d) of the Agreement, Biltmore and Geiser shall bear the imputed cost of the audit.

71.     Accordingly, pursuant to the Agreement, Article VI, §§ 17(f)-(g) and 17(j)-(k), Biltmore and Geiser are jointly and severally liable to the Funds for all unpaid contributions, dues checkoffs, and PAC contributions found due and owing pursuant to an audit of Biltmore's books and records for the period April 1, 2017 through the present, plus interest, liquidated damages, the Funds' reasonable attorneys' fees and costs, and in the event it is substantially delinquent, the imputed cost of the audit.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
## (CLAIM FOR INJUNCTIVE RELIEF)

72.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 71 of this Complaint, as if fully set forth herein.

73.     Pursuant to the Agreement and/or the PLA, Biltmore and Geiser are required to timely pay and/or submit fringe benefit contributions and/or reports to the Funds, remit dues checkoffs and PAC contributions deducted from the wages paid to employees who authorize said

deductions in writing to the Union, and permit and cooperate in the conduct of audits of Biltmore's books and records for so long as they remain obligated to do so pursuant to the Agreement and/or the PLA.

74.     Biltmore and Geiser have failed to timely pay and/or submit fringe benefit contributions to the Funds for the period January 2, 2016 through March 31, 2017, and remit dues checkoffs and PAC contributions deducted from the wages paid to employees who authorize said deductions in writing to the Funds for the same period, and are currently in breach of their obligations under the Agreement.  Their prior conduct demonstrates a significant likelihood that they will continue to breach the terms of the Agreement.

75.     The Funds have no adequate remedy at law to ensure that Biltmore and Geiser will adhere to the terms of the Agreement.

76.     The Funds will suffer immediate and irreparable injury unless Biltmore, its officers including Geiser, agents, servants and employees are enjoined from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions and/or reports, to remit the required dues checkoffs and PAC contributions, and permit and cooperate in the conduct of audits for so long as they remain obligated to do so pursuant to the Agreement.

77.     Accordingly, the Funds request that this Court issue an injunction permanently enjoining Biltmore, its officers including Geiser, agents, servants, employees and all persons in active concert or participation with it who receive actual notice of the order by personal service or otherwise, from failing, refusing or neglecting to pay and/or submit to the Funds the required contributions and/or reports, to remit the required dues checkoffs and PAC contributions, and requiring them to permit and cooperate in the conduct of audits for the term of the Agreement.

## AS AND FOR A EIGHTH CLAIM FOR RELIEF
## (CLAIM FOR INJUNCTIVE RELIEF PURSUANT TO ERISA)

78.     Plaintiffs repeat and re-allege each and every allegation contained in paragraphs 1 through 77 of this Complaint, as if fully set forth herein.

79.     Pursuant to the terms and conditions of the Agreement, Biltmore and Geiser are required to timely pay and/or submit fringe benefit contributions and/or reports to the Funds and permit and cooperate in the conduct of audits of Biltmore's books and records for so long as Biltmore and Geiser remain obligated to do so pursuant to the Agreement.

80.     Upon information and belief, Biltmore and Geiser have failed to timely pay and/or submit fringe benefit contributions to the Funds for the period January 2, 2016 through March 31, 2017 and are currently in breach of their statutory obligations under ERISA. Their prior conduct demonstrates a significant likelihood that they will continue to breach the aforementioned statutory provisions.

81.     Plaintiffs have no adequate remedy at law to ensure that Biltmore and Geiser will continue to adhere to their statutory obligations.

82.     Plaintiffs will suffer immediate and irreparable injury unless Biltmore, its officers including Geiser, agents, servants and employees are enjoined from failing, refusing or neglecting to pay and/or submit to the Funds the required monetary contributions and/or reports for so long as they remain obligated to do so pursuant ERISA.

83.     Accordingly, Plaintiffs request this Court to issue an injunction permanently enjoining Biltmore, its officers including Geiser, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise from violating ERISA by failing, refusing or neglecting to pay and/or submit to the Funds the required contributions and/or reports for the term of the Agreement.

16

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Biltmore and Geiser jointly and severally:

a)     for payment of delinquent fringe benefit contributions in the amount of at least $369,382.76 for the time period January 2, 2016 through March 31, 2017;

b)     for payment of all required dues checkoffs and PAC contributions in the amount of at least $27,550.70 for the time period January 2, 2016 through March 31, 2017;

c)     for interest on delinquent fringe benefit contributions from the time such contributions were due at the rate set by the Agreement;

d)     for interest on unpaid dues checkoffs and PAC contributions at the rate set by C.P.L.R. § 5004;

e)     for liquidated damages on the delinquent fringe benefit contributions, unpaid dues checkoffs and PAC contributions;

f)     for the imputed audit costs;

g)     for Plaintiffs' costs and attorneys' fees;

h)     for an Order requiring Biltmore and Geiser to cooperate with the Funds in an audit of Biltmore's books and records for the time period of April 1, 2017 through the present;

i)     for an Order requiring payment of all fringe benefit contributions, dues checkoffs, PAC contributions, all other statutory and contractual damages, imputed audit costs and interest found due and owing pursuant to the audit of Biltmore's books and records for the time period April 1, 2017 through the present;

j)     for payment of imputed audit costs in the event the audit of Biltmore's books and records for the time period of April 1, 2017 through the present reveals a deficiency of more than 10% of benefits due to the Funds;

k)     for an Order permanently enjoining Biltmore, its officers, including Geiser, agents, servants, employees and all persons in active concert or participation with them who receive actual notice of the order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds and the Union, from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports, and to remit the required dues checkoffs and PAC contributions in accordance with the Agreement and/or the PLA;

l)     for an Order permanently enjoining Biltmore, its officers, including Geiser, agents, servants, employees and all persons in active concert or participation with them

who receive actual notice of this order, by personal service or otherwise, for so long as they remain obligated to contribute to the Funds and the Union, from failing, refusing or neglecting to pay and/or submit the required monetary contributions and/or reports in accordance with ERISA and the Agreement;

m)    for reasonable attorneys' fees, auditor fees, costs and disbursements; and

n)    for such other and further relief as the Court deems just and proper.

Dated: New York, New York
       June 29, 2018

                          GORLICK, KRAVITZ & LISTHAUS, P.C.
                          *Attorneys for Plaintiffs*


                          By: _____
                              Bruce L. Listhaus (BL2381)
                              Joy K. Mele (JM0207)
                              17 State Street, 4th Floor
                              New York, New York 10004
                              blisthaus@gkllaw.com
                              jmele@gkllaw.com
                              Tel. (212) 269-2500
                              Fax (212) 269-2540